**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 10, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

LOUISE SAWYER,

        Plaintiff - Appellant,

v.

SOUTHWEST AIRLINES
COMPANY,

        Defendant - Appellee.

No. 04-3109
(D.C. No. 01-CV-2385-KHV)
(D. Kan.)

GRACE M. FULLER,

        Plaintiff - Appellant,

v.

SOUTHWEST AIRLINES
COMPANY,

        Defendant - Appellee.

04-3110
(D.C. No. 01-CV-2386 KHV)
(D. Kan.)

**ORDER AND JUDGMENT** *

Before **HARTZ** , **McKAY** , and **PORFILIO** , Circuit Judges.

---

\*    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). These cases are therefore ordered submitted without oral argument.

Plaintiffs-appellants Louise Sawyer and Grace M. Fuller are sisters and African Americans. Plaintiffs arrived at the departure gate for a Southwest Airlines (Southwest) flight from Las Vegas, Nevada, to Kansas City, Missouri. Because plaintiffs checked in less than ten minutes prior to departure, they were placed as priority-standby passengers on Southwest's next flight to Kansas City.

After all non-standby passengers boarded the airplane, plaintiffs were allowed to board. While plaintiffs looked for open seats, a flight attendant announced: "Eenie, meenie, minie, mo, pick a seat, we gotta go."

Plaintiffs claimed that the announcement referred to a nursery rhyme with a racist history, and was directed specifically at them as African Americans because they were the only passengers in the aisle and who had not found seats. Plaintiff Fuller, who is epileptic, claimed that she suffered a petit mal seizure during the flight as a result of the announcement. She also claimed that she suffered a grand mal seizure that evening at home, leaving her bedridden for several days. Plaintiff Sawyer did not allege any physical symptoms, and like plaintiff Fuller, she did not seek any psychiatric or psychological counseling.

-2-

Southwest's flight attendant characterized the comment as a general announcement to all passengers, and denied that it was directed solely at plaintiffs. She also denied any knowledge of a racist version of the nursery rhyme, and claimed that she had previously used the same rhyme as humor and to meet departure schedules.

Plaintiffs sued Southwest for violation of their civil rights under 42 U.S.C. § 1981 and for intentional infliction of emotional distress under Kansas law. Additionally, plaintiff Fuller sued for negligent infliction of emotional distress under Kansas law. The district court entered summary judgment for Southwest on the emotional distress claims. A jury returned a verdict in favor of Southwest on plaintiffs' claims under 42 U.S.C. § 1981.

Plaintiffs raise several issues on appeal relating to jury selection, their expert witness, the summary judgment orders, and alleged judicial misconduct.[1] For the reasons below, we find no error and affirm.

Jury Selection

With respect to jury selection, plaintiffs claim for the first time on appeal that because there were no African Americans on the jury, they were denied a fair trial under *Batson v. Kentucky*, 476 U.S. 79 (1986). *Batson*, however, does not

---

[1]The district court appointed counsel to represent plaintiffs. Following the trial, plaintiffs' lawyers withdrew. Plaintiffs appear pro se in this court.

entitle a party to a jury of a particular racial makeup. *Id*. at 85. Instead, *Batson* prohibits a party's use of peremptory challenges to exclude jurors based upon their race. [2] *Id*. at 89.

Setting aside this misapprehension of *Batson*, plaintiffs never raised a *Batson* challenge in the district court. Therefore, there is no evidence as to the racial composition of the jury or that Southwest excluded African-American jurors. Because there is no record from which this court can assess plaintiffs' claim of error, we affirm. *See United States v. Esparsen,* 930 F.2d 1461, 1466 (10th Cir. 1991) (the burden of creating a record of relevant facts concerning a *Batson* challenge belongs to the objecting party).

Plaintiffs also claim that the district court erred by refusing to strike five prospective jurors for cause based on their responses that there are too many lawsuits. Additionally, with respect to two of these five jurors, plaintiffs argue that they should have been disqualified because one had heard something about the case, and the other had been the subject of a race-discrimination complaint.

A district court's denial of a motion to strike a juror for cause is reviewed for an abuse of discretion. *Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1467

---

[2] The holding of *Batson,* which was a criminal proceeding, has been expanded to civil trials. *Edmonson v. Leesville Concrete Co.*, *Inc*., 500 U.S. 614, 616 (1991); *Hurd v. Pittsburg State Univ*., 109 F.3d 1540, 1546 (10th Cir. 1997).

(10th Cir. 1994). Further, a challenge for cause will be granted only if a prospective juror shows actual bias or prejudice. *Id.* at 1467.

During voir dire, these prospective jurors stated that they could follow the court's instructions and render a fair verdict. Significantly, in ruling on plaintiffs' challenges for cause, the district court specifically found that the jurors appeared candid and impartial. [3] Based on our review of the record, the court did not abuse its discretion.

Plaintiffs next claim that they were denied a fair trial because the district court failed to allow them to be present during peremptory challenges. There is nothing in the record to support this argument.

At the conclusion of voir dire and after ruling on plaintiffs' challenges for cause, the district court excused the jury panel and announced a recess for peremptory challenges. Rather than staying in the courtroom to participate, plaintiffs apparently decided to go to the restroom. Although the record does not reveal when plaintiffs left the courtroom or when they returned, following the recess the record shows that the proceedings were in open court, "with all parties present." The clerk read the names of the jurors selected to serve, plaintiffs' lawyers stated that there were no further objections to the composition of the jury,

---

[3]Plaintiffs also argue that there were additional grounds for striking certain jurors for cause. However, because plaintiffs did not raise these challenges in the district court, they are waived. *See United States v. Diaz-Albertini*, 772 F.2d 654, 657 (10th Cir. 1985).

and the trial proceeded. Clearly, plaintiffs were not denied the right to participate.

Expert Witness

Plaintiffs argue that they were prevented from calling their expert witness at trial because the district court would not pay the expert's fees: "[Plaintiffs'] expert testimony was excluded due to [their] indigent status and the financial restraints placed upon their case." Appellants' Br. at 4. Plaintiffs also make passing reference to the court's pretrial order that excluded some, but not all, of the expert's proposed testimony as irrelevant, unreliable, or impermissible legal opinion.

Plaintiffs did not call their expert witness at trial to testify on any topic. The fact that plaintiffs decided not to call their expert witness at trial is obviously not the same thing as excluding testimony. Even if plaintiffs decided not to call their expert because they could not afford to do so, there is no authority that requires a district court to pay a party's expert fees in a civil case.

Although plaintiffs mention Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm. Inc*., 509 U.S. 579 (1993) in their brief, they never discuss how the district court's detailed order concerning the exclusion of some of the topics of their expert's proposed testimony was error. Instead, plaintiffs' entire argument is on this point is as follows: "It was inconceivable to think that the district court

would not only limit [the expert's] trial testimony by excluding significant portions of it, but, then, to put financial restraints on their case to hinder [their] ability to procure the most plausible and essential testimony relevant to their case." Appellants' Br. at 5-6.

The failure to articulate any reason why the district court's order was error pursuant to any authority, including Fed. R. Evid. 702 or *Daubert*, means that this court will not review the order on appeal. *See Am. Airlines v. Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992) (holding statement in brief that ruling is being appealed, without advancing any argument as to the grounds, is insufficient appellate argument).

## Summary Judgment

Plaintiffs contend that the district court erred in granting summary judgment in favor of Southwest on their claims for intentional infliction of emotional distress and plaintiff Fuller's claim for negligent infliction of emotional distress. This court reviews the district court's grant of summary judgment de novo, viewing the evidence and drawing reasonable inferences therefrom in the light most favorable to the nonmoving party. *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1175 (10th Cir. 2001).

After reviewing the record, we conclude that the district court properly granted summary judgment on plaintiffs' claims for intentional infliction of

emotional distress. The court correctly enumerated the elements of and burdens of proof for a claim of intentional infliction of emotional distress under Kansas law. It also correctly applied Fed. R. Civ. P. 56(c) and the law to the summary judgment evidence, to reach its conclusion that the announcement was neither extreme and outrageous, nor had plaintiffs suffered any severe emotional distress. *See Sawyer v. Southwest Airlines, Co.*, 243 F. Supp.2d 1257, 1273-75 (D. Kan. 2003). As such, we affirm the court's summary judgment order.

As to plaintiff Fuller's claim for negligent infliction of emotional distress, the district court held that the claim was preempted by the Airline Deregulation Act, which provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1).

Plaintiff Fuller argues that because she suffered the physical injury required by Kansas law to sustain a claim for negligent infliction of emotional distress, the district court's summary judgment order was error. This argument misses the mark. The relevant issue is preemption – not whether plaintiff Fuller suffered physical injury. Because this argument does not affect the outcome of the case, this court will not consider it on appeal. *Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991) (citation omitted).

Moreover, plaintiff Fuller does not argue that the district court's order holding that the claim is preempted was error. Therefore, this court considers this issue waived on appeal. *Hernandez v. Starbuck*, 69 F.3d 1089, 1093 (10th Cir. 1995).

## Judicial Misconduct

Plaintiffs argue that the district court was guilty of judicial misconduct because the court referred to "eenie, meenie, minie, mo" as a "nursery rhyme" in explaining plaintiffs' lawsuit to the jury, and demonstrated bias against them by adverse rulings during the trial.

Setting aside the fact that plaintiffs never moved for a mistrial, based on our review of the record, there is simply no merit to plaintiffs' argument of judicial misconduct. In numerous pleadings, plaintiffs themselves referred to the phrase as part of a "nursery rhyme." Consistent with their written characterizations, plaintiffs' lawyer in his opening statement referred to the phrase as part of a "racist nursery rhyme." Also, adverse rulings during a trial, standing alone, do not establish animosity or bias. *See Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997).

Plaintiffs also contend for the first time on appeal, that the district court judge should have recused herself because they believe that their court-appointed counsel had been a law clerk for the judge, suggesting that because of this alleged

affiliation, the judge enabled their lawyer to neglect his fiduciary duties. Setting aside the dubious logic of this argument, there is nothing in the record establishing that plaintiffs' counsel was a former law clerk for the judge.

More to the point, even if this court construes the argument of judicial misconduct as a motion to recuse, plaintiffs acknowledge that they knew about the alleged affiliation prior to the trial, but they never requested recusal. Under these circumstances, plaintiffs cannot raise this issue for the first time on appeal. *See Id.* at 1305 (motion to disqualify is untimely where there is no explanation for delay).

The judgments of the district court are AFFIRMED.


Entered for the Court


John C. Porfilio
Circuit Judge